**F. David LUX, Appellant–Defendant,**

v.

**William W. SCHROEDER, Appellee–Plaintiff.**

**No. 79A02–9403–CV–156.**

Court of Appeals of Indiana, Second District.

Jan. 25, 1995.

Transfer Denied May 4, 1995.

William K. Bennett, Bennett, Boehning, Poynter & Clary, Lafayette, for appellant.

Donald W. Shelmon, Rensselaer, for appellee.

## OPINION

FRIEDLANDER, Judge.

F. David Lux appeals from an adverse ruling in William W. Schroeder's partition action against Lux. Lux and Schroeder purchased a parcel of real estate as tenants in common. Following completion of the sale, Lux filed a declaratory judgment action in the Tippecanoe Circuit Court seeking enforcement of an oral agreement between the parties regarding how the property was to be divided. Schroeder filed a motion to dismiss Lux's action, which the trial court granted. Lux filed an amended complaint and Schroeder responded by filing another motion to dismiss. Schroeder then filed a Complaint for Partition in the Tippecanoe County Superior Court No. 1. Lux responded with a Motion to Dismiss or Consolidate. The two actions were consolidated in the Tippecanoe Superior Court. Lux counterclaimed, reiterating the claims which were originally dismissed by the Tippecanoe Circuit Court. Following a trial, the court entered judgment in favor of Schroeder, for partition, and ordered that the parcel be sold and the proceeds be divided evenly between the parties. Lux appeals, presenting four issues for review, which we consolidate into the following:

I. Does the statute of frauds apply to an oral agreement to reconvey real estate?

Schroeder presents the following issue for review:

II. Did the trial court err in not ordering Lux to pay a portion of Schroeder's attorney fees?

We affirm.

The facts favorable to the judgment are that Lux and Schroeder discussed making a joint offer to purchase 207 acres of real estate owned by Equitable Life Assurance Company. The parties proposed dividing the entire parcel into four tracts, and agreed upon which tracts each would take. During the discussions, Lux proposed that Lux pay 60% of the sale price and Schroeder pay 40%. After performing calculations regarding the value of the individual tracts, Schroeder be-

came dissatisfied with Lux's proposal. It is not clear whether and when Schroeder expressed his disapproval to Lux. Shortly thereafter, Lux and Schroeder made an oral offer to purchase the real estate for $450,000. The offer was rejected.

On March 2, 1992, Lux and Schroeder submitted a written offer to purchase the real estate for $475,000, which was accepted the next day. Lux and Schroeder each paid one-half of the down payment and one-half of the cost of surveying the property. The transaction was closed on March 31, 1993, with Schroeder paying one-half of the balance due on that day. Lux paid the remainder (one-half) the next day. Neither party disputes that the oral agreement in question was never reduced to writing.

## I.

The controversy in the instant case centers upon the significance of the parties' oral agreement regarding apportionment of the tracts and sale price. Lux contends that terms of the sale were contained in the oral agreement. Schroeder contends that, even assuming that there was an oral agreement, the statute of frauds renders it unenforceable.[1] The question presented is whether the statute of frauds renders the oral contract unenforceable.

We first set out the applicable standard of review. Where, as here, the trial court enters findings of fact and conclusions of law, we undertake a two-step process. We must first determine whether the evidence supports the findings and then whether the findings support the judgment. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, *trans. denied.* The judgment will be reversed only if it is determined to be clearly erroneous. *Clark's Pork Farms v. Sand Livestock Systems, Inc.* (1990), Ind.App., 563 N.E.2d 1292.

In reviewing such judgments, we consider only the evidence and reasonable inferences favorable to the judgment, and will not reweigh evidence or judge witness credibility. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, *trans. denied.*

The trial court found that there was an oral agreement at the time the written offer was submitted to Assurance, but concluded that the agreement was not enforceable because it was not in writing, as required by I.C. 32-2-1-1. Lux argues alternatively that the court erred because the oral agreement was not within the statute of frauds, or because it fits within an exception to the statute of frauds.

Lux's contention that the oral agreement was not within the statute of frauds is based upon two rationales. Citing *Teague v. Fowler* (1877), 56 Ind. 569, Lux argues that his oral contract with Schroeder was an agreement to reconvey, which he argues is not a contract for the sale of land within the meaning of I.C. 32-2-1-1, and therefore not within the statute of frauds. In *Teague,* the pertinent facts were as follows:

"On the 15th day of February, 1870, it was verbally agreed between said Teague and said William W. Fowler and Margaret A. Fowler, that said Teague should pay one-half of said William W. Fowler's defalcation, as administrator of Rice's estate, and certain other specified debts of said Fowler, in consideration for which said Fowler and wife were to convey to Teague the said two eighty-acre tracts of land, one hundred and sixty in all; one of said eighty-acre tracts, viz., the one on which said Fowler resided, to be reconveyed by said Teague to said Margaret, wife of said William W. Fowler." *Teague, supra,* at 570.

The deed was prepared and executed by the Fowlers and delivered to Teague, who re-

---

1. Ind.Code 32-2-1-1 states, in pertinent part, "No action shall be brought in any of the following cases:

            *      *

Fourth. Upon any contract for the sale of lands

           

  Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the part to be charged therewith, or by some person thereunto by him lawfully authorized, except however, leases not exceeding the term of three (3) years."

fused to reconvey the deed to the tract upon which the Fowlers lived. The court's ruling that the oral agreement was enforceable was grounded in equity. "[W]hen the statute of frauds has been used as a cover to a fraud, equity will relieve against the fraud...." *Id.* at 571.

We do not agree that *Teague* created a "reconveyance" exception to the statute of fraud's writing requirement, or that it provides authority for the proposition that "an agreement to reconvey is not a contract for the sale of lands and that the statute of frauds does not apply to such an agreement to reconvey." Brief of Appellant at 10–11. *Teague* merely illustrates that, when the facts so warrant, courts retain their equitable powers when considering real estate transactions that include oral agreements. We note also that, among other things, *Teague* is distinguishable because the unmistakable taint of fraud upon which *Teague*'s holding was premised is not found in the instant case. Lux cites no other authority for the proposition that an agreement to reconvey real estate is not a contract for the sale of land subject to the statute of frauds, nor does our research reveal any.

Second, Lux contends that the statute of frauds does not apply

> "to enforce an oral agreement that 2 people would purchase a land certificate, which was assigned to only one of them, where they had agreed on a division of the land and the cash difference to be paid by one of them but also where each of them had entered upon possession of the portion allotted to him." Brief of Appellant at 12.

Lux cites *Green v. Vardiman* (1830), 2 Blackf. 324 in support of this assertion.

In *Green*, William and John combined their resources and purchased a tract of land. The land was deeded only to John because John paid a greater amount than William. The parties' oral agreement that William would take possession of a portion of the land was not reduced to writing. William made sporadic payments to John following the purchase, but never paid a total of one-half of the purchase price. When John died, a dispute arose between John's estate and William as to how much of the land, if any, William possessed.

The court held that William's claim was not defeated by the statute of frauds, but did so for equitable reasons.

> "But William had no title to the land. He had only an equitable claim, arising, as far as appears, by parol—a trust, resulting from the payment of the purchase-money; and such a trust has never been considered within the act.... When John T. agreed to allow William so much for the difference in the quantity of land, the transaction is more in the nature of lessening William's claim upon him, than of a purchase of so much land." *Green, supra,* at 331.

*Green*'s facts distinguish it from the instant case. William had paid money and taken possession of the land he contended was his, yet the deed did not reflect that he possessed an ownership interest in the land. Application of the statute of frauds would have yielded an inequitable result: William would have been divested of any possessory interest in the land for which he had paid and upon which he had lived. The court's equitable powers were properly invoked to prevent such an injustice. In the instant case Lux and Schroeder each paid half of the purchase costs, and the deed reflects that each possesses an undivided one-half ownership interest in the land. Unlike *Green,* there is no injustice apparent in the instant case which would warrant or justify exercising the court's equitable powers to suspend the operation of the statute of frauds.

The trial court concluded that there was an oral agreement as Lux asserted and that the agreement had not been repudiated by Schroeder at the time the written purchase offer was made.[2] Lux contends that this finding is inconsistent with the trial court's conclusion that the statute of frauds renders

---

2. The relevant finding of fact states:
   "After the written offer was made on March 2, 1993 and accepted on March 3, 1993 and a few days after Schroeder received his copy of the accepted offer, *Schroeder told Lux that he* *had changed his mind about parcelization of the farm and allocation of the purchase price between the parties based on their previous oral discussions.*" *Record* at 176 (emphasis supplied).

the contract unenforceable. This contention is based upon the doctrine of promissory estoppel.

■ In order to enforce an oral contract to convey real estate under the doctrine of promissory estoppel, a party must demonstrate, *inter alia*, that injustice can only be avoided through enforcement of the oral agreement. *Tipton Farm Bureau Co-Op Ass'n, Inc. v. Hoover* (1985), Ind.App., 475 N.E.2d 38, *trans. denied.* The evidence favorable to the judgment demonstrates that Lux and Schroeder each paid one-half of the sale price and evenly bore the additional costs of the transaction. The judgment requires that the parcel be sold for an amount not less than the purchase price and that the proceeds should be divided evenly between Lux and Schroeder. The trial court's resolution of the dispute insures that each party will realize identical outcomes. This outcome can hardly be characterized as an injustice.

Apart from the outcome, the only "injustice" identified by Lux was Schroeder's refusal to abide by the terms of the oral agreement. Such cannot constitute the requisite "injustice" necessary to invoke the doctrine of promissory estoppel. I.C. 32–2–1–1 contemplates disputes in which two parties reach an oral agreement which one party subsequently refuses to honor. When the statute is applicable, the agreement is not enforceable because it is not in writing. To enact a rule of law stating that an oral land sale contract is unenforceable unless one of the parties reneges on the oral contract is nonsensical and would render the statute's writing requirement meaningless.

■ Lux next argues that the doctrine of part performance takes the oral agreement out of the statute of frauds.

"An oral contract for the sale of land may be removed from the operation of the Statute of Frauds by the doctrine of part performance; whether there was performance sufficient to invoke the doctrine is a question which requires the examination of the circumstances of each case." *Dupont Feedmill Corp. v. Standard Supply Corp.* (1979), 182 Ind.App. 459, 395 N.E.2d 808.

The proposition of law underlying Lux's contention in this regard was rejected in *King v. Hartley* (1919), 71 Ind.App. 1, 123 N.E. 728.

In *King,* a woman died intestate owning a farm. The farm passed to her husband and children, who shared the property as tenants in common. One daughter orally agreed to sell her portion of the farm to her father. After paying the purchase price over a period of time, the father requested that the daughter deed her property to him. The daughter refused to do so, claiming that she had never consented to such an agreement. The court held that the parol agreement for the purchase of the property was within the statute of frauds. The *King* court discussed two arguments presented by Lux in the instant case, both involving part performances as an exception to the statute of frauds.

In the instant case, it can only be argued that Lux partly performed the contract in one respect; he, along with Schroeder, paid the purchase price. The *King* court held that this fact, standing alone, was insufficient to remove a case from the statute of frauds. "The payment of a part or all of the purchase money is not such a part performance as will take a parol contract for the sale of land out of the statute." *King, supra,* 123 N.E. at 730 (quoting *Riley v. Hayworth* (1902), 30 Ind. App. 377, 64 N.E. 928, 930).

The *King* court identified the criteria necessary for the invocation of the doctrine of part performance.

"It is said that the important acts which constitute part performance are actual, open possession of the land, or permanent and valuable improvements made on the land, or these two combined. * * * But in order that the possession may remove the case from the effects of the statute, there must be an open and absolute possession taken under the contract, and with a view to its performance. The possession must be yielded by one party, and accepted by the other, as done in performance of the contract." *King, supra,* 123 N.E. at 730 (quoting *Riley, supra,* 64 N.E. at 930).

It is undisputed that neither party has moved onto any portion of the land or in any other way improved the land, since the sale was completed. Neither Schroeder nor Lux en-

tered onto the land in a manner effectuating or reflecting the terms of the oral contract. To the contrary, the land has been leased to and farmed by a third party, and Lux and Schroeder have shared equally in the lease proceeds. There was no part performance of the contract such as to remove the case from the operation of the statute.

In summary, Lux has failed to demonstrate that the transaction at issue is not within the statute of frauds. Lux has also failed to demonstrate that the transaction is in a class of cases representing an exception to the statute of frauds. Accordingly, the trial court did not err in ruling that the oral agreement was unenforceable because it was in contravention of the writing requirement set out in I.C. 32-2-1-1.

## II.

 Schroeder petitioned the court for an order directing Lux to pay a portion of Schroeder's attorney fees. Schroeder's request was based upon Ind.Code 32-4-5-22, which states,

> "All costs and necessary expenses, including reasonable counsel fees for plaintiff's counsel, the amount thereof to be determined by the court, shall be awarded and enforced in favor of those entitled thereto against the partitioners, and in such proportions against each and according to equity as the court may determine, having regard to their relative interests in the lands or proceeds aparted (apportioned)."

We observe that the trial court did not mention attorney fees in its order. Schroeder concedes, however, that such reflects the court's rejection of Schroeder's request.

Notwithstanding the mandatory "shall" employed in the statute, a request for attorney fees pursuant to I.C. 32-4-5-22 is committed to the trial court's discretion. *Burger v. Schnaus* (1916), 61 Ind.App. 614, 112 N.E. 246. Moreover, this provision was not intended to apply when all sides are represented by counsel, the matters stated in the complaint are contested by the defendant, and the defendant derives no benefit from plaintiff's counsel's services. *St. Clair v.*

*Marquell* (1903), 161 Ind. 56, 67 N.E. 693. As our supreme court has stated, when parties appear by counsel and contest a partition action, "they should not be required to pay the fees of the attorneys of their adversaries." *Osborne v. Eslinger* (1900), 155 Ind. 351, 58 N.E. 439, 444.[3] The trial court did not err in failing to grant Schroeder's request for attorney fees.

Judgment affirmed.

KIRSCH and RUCKER, JJ., concur.

---

**3.** *Burger, St. Clair,* and *Osborne* reviewed attorney fee requests made pursuant to section 1222 of Burns Revised Statutes (1894). That provision is identical to I.C. 32-4-5-22.